# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIDEL MILLS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 06-2444** |
| | : | |
| **PHILADELPHIA GAS WORKS** | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                                                                                               **July 19, 2007**

In this Title VII racial discrimination case, Fidel Mills ("Mills") alleges that his employer, Philadelphia Gas Works ('PGW"), refused to promote him on account of his race and in retaliation for his having filed complaints with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.[1] PGW moved for summary judgment, arguing that Mills had failed to exhaust his administrative remedies and had not made out a *prima facie* case of discrimination or retaliation.

On April 27, 2007, PGW's motion was granted in a footnote order.[2] This memorandum opinion sets out the undisputed material facts and explains in further detail the rationale for granting summary judgment.

---

[1] The counts of the First Amended Complaint alleging First and Fourteenth Amendment violations were dismissed pursuant to PGW's unopposed motion to dismiss. *Order*, *Mills v. Philadelphia Gas Works*, C.A. No. 06-2444 (E.D. Pa. Oct. 17, 2006) (Document No. 12).

[2] *Order, Mills v. Philadelphia Gas Works*, C.A. No. 06-2444, (E.D. Pa. Apr. 27, 2007) (Document No. 21).

## Factual Background[3]

Mills, an African-American male, began working for PGW as a Field Service Helper, in 1997.[4] In 2001, he was promoted to Auto Mechanic.[5] Around October 2001, he complained to PGW's Equal Employment Opportunity representative that a fellow employee had harassed him at work about his weight.[6] No action was taken.[7] In May 2002, Mills filed a charge with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging he was "subjected to a hostile work environment by [his] coworkers because [he is] extremely overweight."[8]

In May or June of 2003, Mills was not moved to the next progression of the Auto Mechanic classification because his supervisor felt that he had trouble working on automobiles.[9] Although Mills was unhappy with the decision, he did not complain to anyone at PGW about not receiving the progression.[10]

---

[3] In light of the summary judgment standard, the facts are presented in the light most favorable to the plaintiff and all inferences are drawn in his favor.

[4] *Am. Compl.* ¶ 9.

[5] *Def.'s Stmt. of Undisputed Facts* ¶ 7.

[6] *Deposition of F. Mills* (Jan. 10. 2007), at 77-78 ("*Pl.'s Dep.*").

[7] *Def.'s Stmt. of Undisputed Facts* ¶¶ 1-2.

[8] *Def.'s Mot. for Summ. J.*, Ex. E ¶ 5 (PHRC Docket No. 200163161D; EEOC Charge No. 17FA260630).

[9] *Def.'s Stmt. of Undisputed Facts* ¶¶ 8-9; *Am. Compl.* ¶ 13; *Pl.'s Dep.* at 80,82.

[10] *Def.'s Stmt. of Undisputed Facts* ¶ 11; *Pl.'s Dep.* at 82.

In November 2004, Mills filed a second PHRC complaint which was cross-filed with the EEOC, alleging race and disability discrimination.[11]  A few months later, in January 2005, the plaintiff sought one of two Senior Driver II positions that were posted.[12]  He was not selected.  The two employees chosen, an Hispanic male and a Caucasian male, had more seniority than Mills, and others with more seniority had rejected the jobs or were considered unqualified.[13]

## Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In examining the motion, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.  *Intervest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  Once the movant has done so, the opposing party cannot rest on the pleadings.  To defeat summary judgment, he must come forward with probative evidence establishing the *prima facie* elements of his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[11] *Def.'s Stmt. of Undisputed Facts* ¶ 18; *Def.'s Mot. for Summ. J.*, Ex. D (PHRC Case No. 200403185; EEOC No. 17FA560412).

[12] *Def.'s Mot. for Summ. J.*, Ex. J ¶ 12.

[13] *Def.'s Mot. for Summ. J.*, Ex. J ¶¶ 16-22.

U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## Exhaustion

Before filing a Title VII action, an employee must exhaust his administrative remedies by filing a complaint with the EEOC or the appropriate state agency charged with enforcing employment discrimination laws. 42 U.S.C. § 2000e-5; *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Without having given the EEOC the opportunity to resolve the dispute, the complainant cannot bring suit. *See Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (*citing Angelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)). The issues in a subsequent legal proceeding are defined by the scope of the EEOC's investigation of the administrative complaint. *Atkinson v. Lafayette College*, 460 F.3d 447, 453 (3d Cir. 2006). Hence, a plaintiff may not assert claims in a civil action that were not presented or did not arise out of the investigation at the administrative level.

When the discrimination continues after the filing of an EEOC complaint, the employee is not required to file additional agency complaints so long as the "acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigations arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (*quoting Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). Consequently, the employee's claims are not necessarily unexhausted merely because facts were not

4

specifically mentioned in his administrative complaint. On the other hand, an agency complaint does not encompass a claim by the mere fact that an "investigation would reveal facts that could support" such a claim. *Fleeger v. Principi*, 2007 WL 677393, at *4 (3d Cir. Mar. 7, 2007) (*citing Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). Instead, the "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Atkinson*, 460 F.3d at 453 (*quoting Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)) (internal quotations omitted).

The allegations in the plaintiff's amended complaint focus on two employment actions that occurred at different times: the senior Auto Mechanic position that was filled in June 2003; and the Senior Driver II job, in early 2005. He insists he was qualified for both positions but was not appointed because he had filed complaints with the company representative, the EEOC and the PHRC. However, the administrative complaint upon which he relies did not exhaust his retaliation claims.[14]

Mills filed two administrative complaints, one in May, 2002, and the other in November, 2004. He relies on the second one to establish exhaustion of his retaliation claim.[15] That charge did not mention retaliation or the Senior Driver II position. In fact, it could not have addressed that position because it was filed before the job was filled.

---

[14] The same analytical framework applies to plaintiff's retaliation claims brought under Title VII and the PHRA. *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

[15] *Am. Compl.* ¶ 7; *Def.'s Stmt. of Undisputed Facts* ¶ 19; *Def.'s Mot. for Summ. J.*, Ex. D (PHRC Case No. 200403185; EEOC No. 17FA560412). The plaintiff's first PHRC/EEOC complaint, filed on May 8, 2002, vaguely alleges retaliation. *See Def.'s Mot. for Summ. J.*, Ex. E. However, the plaintiff does not rely on that administrative action to demonstrate proper exhaustion. More than ninety days had passed from his receipt of a "Notice of Suit Rights" stemming from that administrative action to the filing of this lawsuit. *Def.'s Mot. for Summ. J.*, Ex. C.

The second administrative complaint focused exclusively on PGW's treatment of Mills after he returned to work in December 2003 following a four-month leave for knee surgery. According to that complaint, PGW refused to let Mills return to the Auto Mechanic position that he had held before he had gone on medical leave.[16] Mills claimed a white PGW employee had been allowed to return to the Auto Mechanic position after he had shoulder surgery. Thus, the relevant administrative complaint alleged race and disability discrimination, Mills arguing that PGW would not give him his old job back because he was black and it regarded him as disabled.

The investigation that could "reasonably be expected" to stem from Mills' PHRC and EEOC charges does not encompass the retaliation allegations in this lawsuit. Even if investigation of the disability and race discrimination claims discussed in the PHRC/EEOC complaint would have revealed that Mills had filed complaints against PGW prior to being passed up for promotion, it would not subsume his current retaliation claims. The purpose of the exhaustion requirement is to allow the appropriate agency the opportunity to settle disputes without unnecessary court action. *Antol*, 82 F.3d at 1296. Because neither the EEOC nor the PHRC was put on notice of a retaliation claim, they were not presented with this opportunity. Therefore, Mills had failed to exhaust administrative remedies for his retaliation claims.

Mills' amended complaint in this action asserts he was passed over for two jobs, an

---

[16] According to PGW, the plaintiff resumed the role of Auto Mechanic on November 16, 2004, before it had even become aware of the PHRC/EEOC complaint. *Def.'s Mot. for Summ. J.*, Ex. I. Mills does not dispute this fact.

advanced Auto Mechanic position in June 2003 and a Senior Driver II position in 2005, because of his race and in retaliation for having filed previous complaints.[17]  Mills has abandoned any claim relating to a disability.  Thus, because he did not exhaust his retaliation claim and elected not to pursue a disability claim, the only remaining claim is for racial discrimination.

## Racial Discrimination

The *McDonnell Douglas* burden-shifting framework applies to his Title VII and Pennsylvania Human Relations Act ("PHRA") claims of racial discrimination.  *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).  First, Mills must establish a *prima facie* case of racial discrimination.  *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000).  If he succeeds, the burden of production shifts to PGW to advance a legitimate, nondiscriminatory reason for its actions.  *Id.* at 319.  Once PGW presents such evidence, Mills must point to some evidence that would allow a factfinder to conclude that PGW's proffered reasons for not promoting him are simply a pretext for discrimination.  *Id.*

To make out a *prima facie* showing of Title VII racial discrimination, Mills must establish that (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he suffered an adverse employment action; and (4) nonmembers of the protected class were treated more favorably, *i.e.*, under circumstances giving rise to an inference of discrimination.  *See Jones,* 198 F.3d at 410-11.  There is no dispute that Mills, an African-American, is a member of a protected class and that a refusal to promote is an

---

[17] *Am. Compl.* ¶¶ 13-15, 18, 23-24.

adverse employment action. Thus, if he was qualified for the positions and there are circumstances that could give rise to an inference of discrimination, he has made out a *prima facie* case.

Whether Mills was qualified for the Auto Mechanic promotion is in dispute. He simply insists, without presenting any factual support, that he was "best qualified" for the job.[18] PGW disagrees, saying that Mills had trouble meeting the requirements of his job as Auto Mechanic and did not qualify for promotion.[19] Even assuming that Mills was qualified for the June 2003 Auto Mechanic promotion, he still cannot establish a *prima facie* case of discrimination. Specifically, he has failed to present any evidence, other than his unsubstantiated belief, that non-African-Americans were treated more favorably. He offers nothing to support his perception. He merely relies on the allegations in his amended complaint. Thus, he has not made out a *prima face* case of racial discrimination because he has not satisfied the fourth element.

The same analysis applies to the Senior Driver II promotion he did not receive. Relying solely on the unsupported allegations of his amended complaint, Mills contends he was qualified to be a Senior Driver II, but was turned down for the position while "[s]imilarly situated white employees were not denied consideration."[20] In response, PGW claims Mills did not get the job because it relied on a seniority system, not race, to fill the positions.

Mills' qualifications were not at issue because he was not reached in the seniority process. For purposes of the *prima facie* case analysis, I presume that Mills meets the

---

[18] *Pl.'s Response* at 13.

[19] *Def.'s Mot. for Summ. J.*, Exs. P, Q.

[20] *Am. Compl.* ¶ 21-22.

qualifications requirement. Thus, the remaining element is whether Mills demonstrated that non-black employees were treated more favorably under circumstances giving rise to an inference of discrimination.

The two open positions were filled by an Hispanic and a Caucasian. Standing alone, this fact does not satisfy the fourth element of the *prima facie* test. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). Mills has not produced evidence, direct or indirect, that the selected employees were given preferential treatment, other than on the basis of seniority, in the selection process. There is no evidence in the record from which one can infer that those employees were selected on the basis of their race or that Mills was rejected on the basis of his race.

Mills' failure to satisfy the fourth element of the *prima facie* case ends this inquiry. Nevertheless, for completeness sake, I address the reason for the selections offered by PGW. In doing so, I note that the uncontroverted evidence that PGW applied the seniority system necessarily implicates the last element of the *prima facie* case. In other words, consideration of PGW's applications of the seniority system is relevant at both stages of the inquiry into whether a rational fact finder could find for Mills.

The undisputed facts show that seniority was the determinative factor in the employer's selection process. All eligible employees were ranked by seniority.[21] Of the twenty-two employees on the list, Mills ranked eighteenth in seniority.[22] The positions were

---

[21] *Def.'s Mot. for Summ. J.*, Ex. J. ¶ 9.

[22] *Id.* ¶ 15

offered to the most senior eligible employees.[23]  Because two more senior candidates accepted the job, Mills was never interviewed for the position.[24]

PGW having proffered its reliance on the seniority system as a legitimate nondiscriminatory reason for its actions, the burden shifted to Mills to discredit this reason or adduce evidence that discrimination was more likely than not a motivating or determinative cause for his not being promoted.  *Fuentes*, 32 F.3d at 764.  Mills has proffered no evidence that any factor other than seniority played a role in his not having been promoted.  Rather, he relies on his speculation.  Mills simply restates the allegation that he was qualified for the Senior Driver II position and PGW's decision was racially motivated.  He insists that a trier of fact must determine the value of the documents and affidavits generated by PGW's employees and relied on by PGW to support its summary judgment motion.  Yet, he fails to present any evidence that casts doubt on the validity of the defendant's seniority system, instead, ignoring it.

A plaintiff cannot avoid summary judgment "simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations." *Fuentes*, 32 F.3d at 764. That is what Mills attempts to do.  Instead, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence."  *Id.* at 765 (emphasis in original).  He offers no factually grounded

---

[23] *Id.* ¶¶ 15-23.

[24] *Id.* ¶ 23.

reason why PGW's proffered nondiscriminatory reasons are not credible. Accordingly, PGW is entitled to judgment on the racial discrimination claims.[25]

## Conclusion

Mills has failed to demonstrate that he exhausted his administrative remedies. Even if he had, nothing in the record suggests or gives rise to an inference that PGW relied on anything other than a seniority system to fill positions or treated non-blacks more favorably than blacks in making employment decisions affecting Mills. Nor could a reasonable jury conclude that it did. Therefore, summary judgment in favor of the defendant was appropriate.

---

[25] Because the plaintiff's retaliation claims are barred by his failure to exhaust administrative remedies, additional analysis is not necessary. It is worth noting, however, that even if the plaintiff had properly exhausted, his retaliation claims would still fail for the same reasons as the racial discrimination claims.

To make out a *prima facie* case of retaliation, the plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneous with the protected activity; and (3) there is a causal connection between the adverse action and the protected activity. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Assuming the plaintiff could establish all three elements, he still cannot show that PGW's non-discriminatory reason for not promoting him was pretextual.